**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DAVID JOSEPH GARZA,** | § | |
| **#45011-380** | § | |
| | § | |
| **Movant,** | § | **SA-19-CV-079-XR** |
| | § | **SA-14-CR-827-XR-1** |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

**ORDER**

Before the Court is Movant David Joseph Garza's ("Garza") *pro se* Motion pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") to vacate, set aside, or correct his sentence imposed following a conviction for conspiracy to interfere with interstate commerce by robbery and supporting Memorandum with affidavit (ECF Nos. 222 & 223); the Government's Response in opposition thereto (ECF No. 230); and Garza's Reply (ECF No. 231). For the following reasons, the Section 2255 Motion is **DENIED**.

**BACKGROUND**

**1. Factual Background and Criminal Proceedings**

Garza's conviction in this case arises from his involvement in a prolific robbery ring that targeted retail establishments in Texas and elsewhere. (ECF No. 90 at 7). Additionally, Garza and his co-conspirators routinely stole vehicles, which they would drive to the target establishments and then abandon at a staging area following the robberies. (*Id.* at 5-7). The majority of the robberies and burglaries occurred at chain stores in the middle of the night when employees were

not directly threatened. (ECF No. 230 at 3). Therefore, many of the crimes were not charged federally, as they did not qualify as Hobbs Act violations. (*Id.*).

On October 15, 2014, a federal grand jury returned a six-count indictment alleging that, from April 2010 to January 2012[1], Garza and his co-defendants conspired to rob a number of retail establishments, primarily jewelry stores, in San Antonio, San Marcos, and Austin, Texas, and conspired to steal a Frost Bank ATM from a hospital in San Antonio. (ECF No. 3). Counts One through Five charged Garza with conspiracy to interfere with interstate commerce by robbery pursuant to 18 U.S.C. § 1951. (*Id.* at 1-6). Count Six charged Garza with conspiracy to commit bank larceny pursuant to 18 U.S.C. §§ 2113(b) and 371 for stealing the ATM. (*Id.* at 6-7). Attorney John Michael Economidy was appointed to represent Garza. (ECF No. 46).

Garza pleaded guilty to Count One of the indictment pursuant to a Plea Agreement. (ECF Nos. 73 & 77). In executing the Plea Agreement, Garza admitted to the factual basis, which included the April 6, 2010 robbery of a Diamond and Jewelry Gallery in San Antonio; the June 4, 2010 robbery of a Kay Jewelers in San Antonio; the November 12, 2010 burglary of a Sam's Club in Austin; the November 19, 2010 robbery of a Tourneau Jewelers in San Marcos; the January 18, 2011 robbery of a Ben Bridge Jewelry Store in Austin; and the September 8, 2011 theft of a Frost Bank ATM from a hospital in San Antonio. (ECF No. 73 at 2-6).

As part of the Plea Agreement, the parties agreed to a recommended total offense level of 29, due to the age and complexity of the case and the number of witnesses needed to prosecute the case. (*Id.* at 9). The recommended total offense level of 29 reflected all adjustments, including a three-point downward adjustment for acceptance of responsibility. (*Id.*). Additionally, the

---

[1] Due to a proofing error, the indictment represents the date of the conspiracy as "starting in or about November 2010 and continuing until in or about May 2011." (ECF No. 3 at 1; ECF No. 97 at 1). However, the overt acts set forth in Count One of the indictment include acts attributable to the defendants between April 5, 2010, and January 30, 2012.

Government agreed not to seek an enhancement for aggravating role as leader of the conspiracy. (*Id.*). Garza agreed to waive the right to appeal his conviction and sentence but reserved the right to raise claims of ineffective assistance of counsel. (*Id.* at 7).

Thereafter, a United States probation officer prepared a Pre-Sentence Report (PSR). (ECF No. 90). The PSR calculated a single, combined adjusted offense level of 33 using units, pursuant to U.S.S.G. § 3D1.4. (*Id.* at 12). After deducting three points for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), the PSR reflected a total offense level of 30. (*Id.*). Garza faced a statutory maximum term of imprisonment of twenty years. (*Id.* at 23). Based upon a total offense level of 30 and a criminal history category of VI, the PSR calculated Garza's advisory Guidelines sentencing range as 168 to 210 months of imprisonment. (*Id.*). However, the PSR noted the parties' agreement to recommend a total offense level of 29. (*Id.*). Based on a total offense level of 29 and a criminal history category of VI, the PSR calculated Garza's Guidelines sentencing range as 151 to 188 months of imprisonment, in the event the Court adopted the Plea Agreement's recommendation. (*Id.* at 24).

On September 15, 2015, this Court sentenced Garza to 151 months of imprisonment with credit for time served since November 12, 2014, a three-year term of supervised release, and a $100.00 special monetary assessment, and ordered Garza to pay restitution in the amount of $1,695.627. (ECF No. 102). On the Government's motion, the Court dismissed the remaining counts of the indictment. (*Id.*). Judgment was entered on September 21, 2015. (*Id.*). An amended judgment was entered to reflect the correct victim. (ECF No. 144).

### 2. Section 2255 Motion

On September 1, 2016, Garza filed a Section 2255 Motion, which he amended shortly thereafter. (ECF Nos. 141 & 149). The amended Section 2255 Motion and supporting

memorandum alleged, among other things, that Garza instructed Mr. Economidy to file an appeal on his behalf, but Mr. Economidy failed to do so. (ECF Nos. 149 & 150). An evidentiary hearing was held as to whether Garza requested that Mr. Economidy file a notice of appeal. (ECF No. 170). Following the hearing and upon the Magistrate Judge's Report and Recommendation, this Court stayed the Section 2255 Motion and granted Garza an out-of-time appeal based on a letter Garza sent to the district clerk demonstrating his intent to appeal. (ECF No. 184). The Court later dismissed the pending amended Section 2255 Motion without prejudice pending resolution of Garza's appeal. After the Fifth Circuit Court of Appeals dismissed Garza's appeal, Garza re-filed the Section 2255 Motion now pending before this Court. (ECF Nos. 218 & 222). Although Garza asserts twelve individual grounds for relief based on the alleged ineffective assistance of counsel, his two primary contentions are as follows: first, that he pleaded guilty based on the erroneous advice of counsel, and, second, that counsel intentionally punished him by failing to assert various arguments on his behalf at sentencing.

## APPLICABLE LAW

### 1. Legal Standard

A federal defendant may move to vacate, set aside, or correct his sentence if: (1) the imposition of the sentence was in violation of the Constitution or the laws of the United States; (2) the District Court that imposed the sentence lacked jurisdiction; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Thus, § 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete

miscarriage of justice. *See, e.g., United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

## 2. Waiver of the Right to Appeal

A defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement as long as the waiver is both knowing and voluntary. *See, e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). As the Fifth Circuit stated in *Portillo*:

> [W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal.

*McKinney*, 406 F.3d at 746 (quoting *Portillo*, 18 F.3d at 293). A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746–47). A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances − even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998).

The Supreme Court's decision in *Boykin v. Alabama* requires a hearing prior to entry of a guilty plea, at which the Court must elicit an affirmative showing that the decision to plead guilty

was voluntarily and intelligently made. 395 U.S. 238, 243 (1969); *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring guilty pleas are voluntary and knowing, by requiring a judge to ensure the defendant understands the law governing his crime in relation to the facts of his case, as well as his rights as a criminal defendant. *United States v. Vonn*, 535 U.S. 55, 62 (2002).

However, a determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal or collaterally attack his conviction and sentence, does not require the trial court to conclude the defendant has a perfect understanding of the consequences; the Court must only establish the defendant understands the charges and has a realistic understanding of the consequences. *United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir. 1993). The Court must also ensure there was no coercion to enter the guilty plea. *Id.* Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

### 3. Ineffective Assistance of Counsel

Even if a defendant waives his right to appeal or collaterally attack his plea and sentence, he can avoid those waivers based on a claim of ineffective assistance of counsel if he shows "the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). An ineffective assistance of counsel claim in the context of a guilty plea is subject to the same standard as any other ineffective assistance claim, *i.e.*, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate counsel's performance was deficient and the deficient performance prejudiced his defense. *Id.* at 687. The

failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The proper standard for attorney performance is that of reasonably effective assistance. *Id.* at 688. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that, considering all the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id.* A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 687–89. To determine whether counsel's performance was constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. An attorney's strategic choices, usually based on information supplied by defendant and from a thorough examination of relevant facts and law, are virtually unchallengeable. *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998), *cert. denied*, 528 U.S. 895 (1999).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. In this analysis, a defendant's sworn statements made to the Court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

With respect to sentencing issues, the prisoner must establish a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 436–8 (5th Cir. 2004); *Glover v. United States*, 531 U.S. 198, 203 (2001).

## DISCUSSION

### 1. Ground One

Garza first asserts counsel was ineffective for failing to challenge this Court's subject-matter jurisdiction on the grounds that no litigant in this case demonstrated Article III standing. (ECF No. 223 at 1). This claim is without any legal or factual basis. Federal courts have jurisdiction over criminal cases brought by the federal government against a defendant for violations of the laws of the United States. *See* U.S. Const., art. III, § 2. Because counsel is not ineffective for failing to raise a frivolous objection, Ground One is meritless. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000).

### 2. Ground Two

Garza next alleges counsel was ineffective for failing to argue that Garza's Sixth Amendment right to counsel was violated because he was not represented by counsel at his initial appearance, nor did he waive his right to counsel. (ECF No. 223 at 1). Garza further contends that because he was denied his right to counsel at his initial appearance, this Court lacked jurisdiction over the criminal proceedings. (*Id.*).

At the time of his initial appearance on the indictment in this case on November 12, 2014, Garza was being held in state custody on state charges and was brought to federal court on a bench

warrant. (ECF Nos. 206 & 207). The Magistrate Judge appointed Mr. Economidy to represent Garza that day. (ECF No. 46). Under the circumstances of this case, the events occurring at the initial appearance did not amount to a critical stage in the proceedings, and thus Garza was not entitled to counsel at that time. *See Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 212–13, 212 n.16 (2008). Accordingly, counsel was not ineffective for failing to challenge the Court's jurisdiction. Ground Two is therefore meritless.

### 3. Ground Three

In Ground Three, Garza alleges he pleaded guilty based upon the misrepresentations of his counsel. (ECF No. 223 at 1). Specifically, Garza avers that Mr. Economidy exaggerated the sentence Garza would face if he proceeded to trial and "misrepresented" certain facts that proved Garza's innocence in order to intimidate Garza into pleading guilty. (*Id.* at 1; 8-9). Upon learning of these alleged misrepresentations, Garza asserts he asked Mr. Economidy to move to dismiss the charges in this case, but Mr. Economidy refused. (*Id.* at 10). Due to counsel's refusal, Garza filed a motion to dismiss counsel, which this Court later denied. (*Id.*).

As an initial matter, the record in this case—including the Plea Agreement and the solemn declarations Garza made in open court—demonstrates that Garza's guilty plea was knowingly and voluntarily made. The record establishes that Garza read and understood the charges against him, had a realistic understanding of the consequences, and voluntarily entered into the Plea Agreement. A guilty plea may be rendered invalid, however, if entered into on the erroneous advice of counsel. Here, Garza fails to establish that his counsel's advice to plead guilty was outside of the "range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 ("Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range

of competence demanded of attorneys in criminal cases.'") (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Garza first alleges that Mr. Economidy erroneously advised him he would face a sentence of 240 to 280 months if he proceeded to trial, which Garza insists was an overestimation because the maximum term of imprisonment he faced was twenty years, or 240 months. (ECF No. 223 at 8). Garza states he admitted to counsel that he stole cars for his co-defendants, but he did not know what his co-defendants did with the cars, and despite protesting his innocence and his desire to proceed to trial, Mr. Economidy continued to "stress the need" for Garza to pleaded guilty. (*Id.*). Garza asserts Mr. Economidy told him if he proceeded to trial, the judge would sentence him to twenty years on each count to run consecutively. (*Id.*). Garza insists this is false because the Court would have ordered the sentences to run concurrently. (*Id.*).

Garza was charged in all six counts of the indictment. (ECF No. 3). He faced a statutory maximum penalty of twenty years of imprisonment as to each of Counts One through Five, and a ten-year maximum term of imprisonment as to Count Six. (ECF No. 207 at 6-7); 18 U.S.C. § 1951(a); 18 U.S.C. § 2113(b). Thus, without the benefit of the Plea Agreement, Garza faced a total statutory maximum term of 110 years of imprisonment, if the Court had ordered the sentences to run consecutively, which it had the authority to do. *See* U.S.S.G. § 5G1.2(c)-(d). Garza was advised as to the maximum penalties he faced at his initial appearance and confirmed on the record that he understood:

> The Court: . . . If you were ever convicted on any of the first five counts, or first five crimes, Counts 1 through 5, the maximum penalty is 20 years imprisonment. The maximum fine you could face is $250,000. The maximum term of supervised release, which would come after imprisonment, is three years. And then there's a $100 mandatory special assessment. And that $100 assessment applies in all federal felony cases.

On that last count, that's the one that's the larceny count, under 18 U.S.C. 2113, the maximum penalty there is ten years imprisonment. Again, it's a $250,000 fine, three years of supervised release and the $100 mandatory special assessment. These are the maximum penalties you could face if you were ever convicted of any of these charges. Do you understand?

Defendant Garza: Yes.

(ECF No. 207 at 6-7). Additionally, without the benefit of a downward adjustment for acceptance of responsibility by pleading guilty, Garza faced an advisory Guidelines sentencing range of 235-293 months. (ECF No. 209 at 27; ECF No. 230 at 13). Had Garza been found to be a leader of the conspiracy, his Guidelines sentence would have been in the range of 292-365 months. (*Id.*).

Despite being named in all counts of a six-count indictment and facing a maximum penalty of 110 years of imprisonment, Mr. Economidy negotiated a plea bargain in which Garza would plead guilty to Count One only. In pleading guilty to Count One and receiving the benefit of a three-level reduction for acceptance of responsibility, Garza would have ordinarily faced a Guidelines sentencing range of 168 to 210 months, based on a total offense level of 30 and a criminal history category of VI. (ECF No. 90 at 23; ECF No. 157 at 7). However, Mr. Economidy further negotiated an agreement wherein the Government agreed to recommend that Garza be sentenced at a level 29, which reduced Garza's exposure under the Guidelines to a range of 151 to 188 months. (ECF No. 73 at 9; ECF No. 90 at 24). In sum, although Garza faced 110 years of imprisonment, due to Mr. Economidy's advocacy, Garza was ultimately sentenced to 151 months, or roughly twelve-and-a-half years of imprisonment.

Moreover, Garza provides nothing in the way of direct evidence supporting his allegation that Mr. Economidy informed him he faced a Guidelines range of 240 to 280 months of imprisonment as Garza alleges. Even so, such advice was not an overestimation. As noted above,

had Garza proceeded to trial, he would have faced a Guidelines sentencing range of 235-293 months.

Garza's understanding that his sentence would have been capped at twenty years had he gone to trial is erroneous. Garza faced a twenty-year maximum as to *each* of Counts One through Five and a ten-year maximum as to Count Six. Had he rejected the plea bargain, Garza would have faced a trial on all six counts. The record of Garza's initial appearance makes clear that he understood the maximum penalties in this case. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (holding there is a strong presumption of verity for solemn declarations in court); *United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) ("[R]eliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary. As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences.").

Even assuming for the sake of argument that Mr. Economidy erroneously advised Garza regarding his sentencing exposure, Garza cannot show prejudice in light of the benefit the Plea Agreement provided. A failure to establish either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697. To show prejudice in the context of a guilty plea, Garza must establish "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. However, a prisoner's allegation that he would not have pleaded guilty must be reasonable. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

Garza cannot reasonably argue that he would have rejected the Plea Agreement—which capped his sentence at twenty years—in favor of going to trial, where he faced a maximum prison term of 110 years, had counsel advised him accurately as to his Guidelines sentence. Therefore,

Garza fails to establish his guilty plea is invalid as a result of his counsel's allegedly erroneous advice regarding his sentencing exposure.

Garza further alleges that both Mr. Economidy and counsel for the Government "misrepresented crucial and exonerating facts" in order to pressure Garza into pleading guilty, and Garza discovered counsel's "misrepresentations" when he obtained copies of the discovery in this case. (ECF No. 223 at 9). Specifically, Garza states he discovered that "many" of the offenses alleged in the indictment were clearly outside of the time-frame of the conspiracy; that police reports demonstrate Garza did not match an eyewitness' description of the getaway driver in the Kay Jewelers and Diamond and Jewelry Gallery robberies in 2010; and the monetary loss amounts attributed to Garza "in excess of 3 million" were wrong. (*Id.*). Garza claims he brought these points to Mr. Economidy's attention immediately, however Mr. Economidy nevertheless advised Garza to plead guilty. (*Id.*).

Construed liberally, Garza is alleging that Mr. Economidy advised him to plead guilty despite the existence of what Garza believes is exonerating evidence. However, Garza fails to establish that the aforementioned discovery stood to exonerate him, especially considering the extent of the criminal conduct in this case and the charges against him. It is clear even in the absence of a sworn response by Mr. Economidy that Mr. Economidy did not share Garza's opinion that the discovery was exonerating. Garza fails to demonstrate counsel's advice to plead guilty was deficient, particularly in light of the benefit the Plea Agreement provided him. Moreover, Garza represented under oath in open court that he entered the plea after having discussed with counsel the facts of his case and any potential defenses and that his guilty plea was free of threats, coercion, and force. (ECF No. 156).

For these reasons, Garza cannot establish that counsel's performance during the plea proceeding was deficient and that he was prejudiced thereby. Garza therefore fails to meet his burden under *Strickland* as to Ground Three.

### 4. Ground Four

Garza next alleges counsel was ineffective for failing to move to suppress "inadmissible co-conspirator statements [] that did not meet the exception to the hearsay rule under 801(d)(2)(E)" because they were not made during and in furtherance of the conspiracy in this case. (ECF No. 223 at 1-2). Garza does not indicate what the inadmissible statements are or how the use of the statements affected the outcome of the proceedings in this case. Garza's claim is therefore conclusory and does not warrant relief. *See United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007) (Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255).

### 5. Ground Five

In Ground Five, Garza alleges counsel was ineffective for failing to present certain police reports as mitigating evidence at sentencing. (ECF No. 223 at 2). Garza expounds upon this claim in his sworn affidavit. Garza alleges that Mr. Economidy visited him in prison and told him he would not provide any mitigating evidence on Garza's behalf at sentencing as retribution for Garza having moved to dismiss him as counsel. (*Id.* at 10-11). Garza contends that Mr. Economidy made good on his threats at sentencing by not introducing the police reports from the 2010 Kay Jewelry and Diamond and Jewelry Gallery robberies as mitigating evidence. (*Id.*).

According to Garza, the police reports are exonerating because Garza does not meet an eyewitness' description of the suspect identified as Garza during those two robberies. (*Id.*). The eyewitness statements identified Garza, the getaway driver, as a "black male" in the June 4, 2010

Kay Jewelry robbery and as weighing 145 pounds in the April 6, 2010 Diamond and Jewelry Gallery robbery. (*Id.*). Garza asserts he is Hispanic and weighed 200 pounds at the time of the robberies. (*Id.* at 16, 19).

The Court first notes that Garza presents no evidence, aside from his own self-serving allegations, demonstrating that Mr. Economidy sought to punish Garza at sentencing. On the contrary, the record demonstrates that after the Court denied Garza's motion to dismiss counsel, Mr. Economidy continued to zealously defend Garza by filing various motions and objections on behalf of Garza and raising numerous objections at sentencing.

Moreover, Garza cannot demonstrate counsel rendered ineffective assistance for declining to present the police reports at sentencing. Mr. Economidy's clear strategy at sentencing was to urge the Court to adopt the Plea Agreement, which included the jointly recommended Guidelines sentencing range of 151 to 188 months. In the Plea Agreement's factual basis, Garza admitted to his involvement in the 2010 Kay Jewelry and Diamond and Jewelry Gallery robberies. (ECF No. 73 at 2-3). The jointly recommended 151 to 188 months Guidelines sentencing range reflected a three-point reduction for acceptance of responsibility. (*Id.* at 9). Arguing at sentencing that Garza was not involved in either robbery is inconsistent with accepting responsibility and would have jeopardized the Plea Agreement. Garza cannot establish prejudice because he cannot demonstrate he would have received less time in prison had counsel introduced the reports. Therefore, Garza fails to establish ineffective assistance under *Strickland* as to Ground Five.

### 6. Ground Six

Garza next alleges that Mr. Economidy was unconstitutionally ineffective for failing to move for a continuance in order that Garza might be sentenced after Amendment 791 to the Sentencing Guidelines took effect. (ECF No. 223 at 2). Amendment 791 amended the financial

loss tables of § 2B1.1 to account for inflation. Garza asserts he asked Mr. Economidy to move to continue his sentencing, which was scheduled for September 15, 2015, until after the amendment went into effect on November 1, 2015. However, despite knowing that a continuance was necessary for Garza to obtain the benefit of the amendment, Mr. Economidy refused to move for one. (*Id.* at 11-12). As a result, Garza alleges he received an additional point under the financial loss table as a result of counsel's inaction. (*Id.* at 12).

The record reflects that, at Garza's sentencing hearing, counsel raised the issue of the proposed changes to Amendment 791. (ECF No. 157 at 8-9). After considering the issue, the Court sentenced Garza at a level 29, pursuant to the Plea Agreement, but informed Garza that it would entertain any motions to reduce the sentence filed by Garza following the enactment of Amendment 791. (*Id.* at 9). Thereafter, in January 2016, Garza filed a *pro se* motion seeking a reduction of his sentence based on Amendment 791. (ECF No. 122). Because Amendment 791 does not apply retroactively, the Court determined there was no basis on which to modify Garza's sentence and denied the motion. (ECF No. 124).

Even assuming for the sake of argument that counsel acted improperly by failing to request a continuance, Garza cannot show prejudice because there is no evidence that this Court would have granted the motion and continued Garza's sentencing. The mere fact that Garza could have benefited from the continuance is not sufficient, in itself, to demonstrate that it was "reasonably probable" that the Court would have granted the motion, leading to the application of the reduction. *See United States v. Flores-Ochoa*, 139 F.3d 1022, 1025 (5th Cir. 1998). Garza further fails to establish prejudice because the Court adopted the jointly recommended total offense level of 29 stipulated in the Plea Agreement, rather than the PSR's calculated total offense level of 30.

Accordingly, because Garza cannot demonstrate prejudice as he is required to do under *Strickland*, Ground Six is denied.

### 7. Ground Seven

Garza next alleges counsel was ineffective for failing to object when the attorney for the Government misrepresented to the Court that the base offense level agreed upon by the parties in the Plea Agreement was 30, rather than 29. (ECF No. 223 at 2-3). Garza further contends the Government's attorney and the probation office failed to calculate the correct application of the Guidelines, and as a result the Court failed to award Garza the one-level reduction he was entitled to pursuant to Amendment 791. (*Id.* at 3).

Garza's contention is controverted by the record. The Government specifically requested that the Court sentence Garza at an offense level 29 as set forth in the Plea Agreement. (ECF No. 157 at 8). The Court then inquired how Amendment 791, if applicable after its enactment, would alter the offense level calculation in the PSR, notwithstanding the Plea Agreement. To that, the attorney for the Government responded as follows:

> Mr. Lathrop: He would go from 30 to 29, the way I understand it. Now, it is complicated because it changes – you know, goes into the units. Each one – each one of the counts is adjusted on its own. I believe probation might have run those numbers, but my count of it, he would end up at a 29 with those amendments.

(*Id.* at 9). The Court then stated it would sentence Garza at an offense level of 29, as was agreed to in the Plea Agreement, and entertain any future motions for reduction of sentence following Amendment 791's enactment. (*Id.*). Accordingly, Mr. Economidy had no reason to object because the Government recommended sentencing Garza at an offense level 29, as agreed. Therefore, Mr. Economidy's performance was not deficient. Moreover, Garza also cannot demonstrate prejudice because the Court ultimately sentenced him at an offense level 29. For these reasons, Ground Seven is meritless.

### 8. Ground Eight

In Ground Eight, the Court understands Garza to allege that counsel rendered ineffective assistance for failing to object to the PSR's inclusion of the November 12, 2010 Sam's Club burglary as relevant conduct in his offense level computation pursuant to U.S.S.G. § 3D1.2(d). (ECF No. 223 at 3). According to Garza, the Sam's Club burglary should not have been included in the offense level computation because it does not qualify as a Hobbs Act violation and was not charged as an individual count in the indictment. (*Id.*). Garza alleges his base offense level was enhanced by one level as a result of including the burglary. (*Id.*).

The November 12, 2010 burglary of Sam's Club was included in the PSR as relevant conduct in Garza's base offense level computation, which added .5 units to the total number of units used to calculate his multi-count adjustment. (ECF No. 90 at 6, 10). Under the Guidelines, relevant conduct does not have to be charged as an individual count in the indictment in order to be used in calculating the offense level.

However, even assuming for the sake of argument that counsel was ineffective for failing to challenge the offense level computation, the Court sentenced Garza at an offense level 29 based on the Plea Agreement, rather than the base level 30 computed in the PSR. Because Garza was not sentenced based on the projected offense level computed in the PSR, he cannot demonstrate he was prejudiced by counsel's failure to object to the PSR's calculation. Ground Eight is therefore without merit.

### 9. Ground Nine

In Ground Nine, Garza alleges counsel was ineffective for failing to "object and verbally argue" that Garza should receive credit for the time he served on an undischarged state sentence for burglary of a Sam's Club on January 30, 2012. (ECF No. 223 at 3-4). The record reflects that

Mr. Economidy filed a motion seeking credit for time Garza served in a Texas prison for the January 30, 2012 Sam's Club burglary on the grounds that the burglary was relevant conduct to the offense of conviction under U.S.S.G. § 1B1.3. (ECF No. 82).

At sentencing, counsel for the Government argued that Garza should not be given credit for the time served because the January 30, 2012 Sam's Club burglary was not used to calculate his offense level or criminal history, was not included in the factual basis supporting the Plea Agreement, and was not a separately charged offense in the indictment. It was included only as an overt act in the conspiracy charge. (ECF No. 157 at 13).

The record reflects counsel did verbally object as follows at sentencing: "I believe my client's position on that is that since it was named in the conspiracy, that made it a part of this offense and should not have been counted." (*Id.* at 14). The Court denied the request—crediting Garza for time served in federal custody only—and deferred to the Bureau of Prisons to calculate whether Garza would receive credit for time served on the burglary. (*Id.* at 12). Accordingly, because the record reflects that, contrary to Garza's assertions, counsel did request credit for the time Garza served on the burglary both by written motion and oral objection at sentencing, Ground Nine is baseless.

### 10. Ground Ten

Garza next alleges counsel was ineffective for failing to verbally argue at sentencing that Garza should have been granted double credit for time he served in segregated custody. (ECF No. 223 at 4). The record reflects Mr. Economidy filed a motion seeking double credit for 955 days Garza spent in segregated custody. (ECF No. 83). The Court denied the request at sentencing and credited Garza for time served in federal custody. (ECF No. 157 at 12). Mr. Economidy's motion adequately presented the issue. A verbal argument at sentencing for credit would not have changed

the Court's ruling. Therefore, because counsel was not ineffective for failing to verbally argue in support of the motion at sentencing, Ground Ten is denied.

### 11. Ground Eleven

In Ground Eleven, Garza alleges counsel was further ineffective for failing to challenge the use of six prior state felony convictions from July 1992 to compute Garza's criminal history category. (ECF No. 223 at 5-6). Garza asserts the convictions were too old to count against him pursuant to U.S.S.G. § 4(A)(1).1(a), which provides that, "A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period." Garza alleges that, due to counsel's ineffective assistance in failing to challenge the use of these prior convictions, Garza was assessed a criminal history category VI instead of III, which resulted in him receiving a higher sentence. (ECF No. 223 at 6).

The PSR reflects that Garza was assessed three criminal history points each for six prior convictions for which he was sentenced in 1992. *See* ECF No. 90, ¶¶ 71-72, 74-77. These convictions were properly counted pursuant to § 4(A)(1).1(a) because Garza's incarceration as a result of these convictions extended into the fifteen-year period preceding the commencement of the offense in this case. Therefore, because the convictions were properly counted, counsel was not ineffective for failing to object to them. Ground Eleven is therefore without merit.

### 12. Ground Twelve

In his final ground for relief, Garza alleges Mr. Economidy was further ineffective for not objecting to this Court's failure to conduct a "proper inquiry" into Garza's motion to dismiss counsel. (ECF No. 223 at 5). Garza filed a *pro se* motion to dismiss counsel on the grounds that his counsel developed a "conflict of interest" by not having the time to discuss Garza's case or

respond to Garza's requests. (ECF No. 63 at 1). Having determined that Garza's conclusory allegations failed to establish a basis for the dismissal of his attorney, the Court denied the motion. Garza now asserts counsel was ineffective for failing to object to the Court's denial of the motion. (ECF No. 65). Garza fails to establish there were sufficient grounds upon which to grant the motion. Therefore, Garza cannot demonstrate counsel was deficient or that he was prejudiced by Mr. Economidy's failure to object to the denial of the motion. Ground Twelve is without merit.

## EVIDENTIARY HEARING

An evidentiary hearing on a § 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *Cervantes*, 132 F.3d at 1110). Because the issues presented in this case can be resolved on the basis of the record, the Court finds an evidentiary hearing is not required.

## CONCLUSION

Garza entered a knowing and voluntary guilty plea pursuant to a Plea Agreement. Garza fails to show the ineffective assistance of counsel in his plea proceedings rendered his guilty plea involuntary or that his counsel rendered ineffective assistance at sentencing. Accordingly, Garza's Section 2255 Motion is denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings,

the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the movant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where the Court rejects a movant's constitutional claims on the merits, "the [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the denial of Movant Garza's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

**IT IS ORDERED** that Movant David Joseph Garza's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 222) is **DENIED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DISMISSED AS MOOT**, and this case is now **CLOSED**.

**FINALLY**, **IT IS ORDERED** that a certificate of appealability is **DENIED**.

SIGNED this 3rd day of December, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE